IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-1836 |
| 3M COMPANY, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM ORDER

This case was brought by the State of Maryland ("the State") against 3M Company ("3M") and other defendants in the Circuit Court for Baltimore City. It was removed to this Court by 3M, alleging that this Court had jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and that federal enclave jurisdiction provided an alternative basis for removal under 28 U.S.C. §§ 1331 and 1441(a). (ECF No. 1 at 3.) The Complaint (ECF No. 5), which is one of a series of complaints brought nationwide, alleges that substances are responsible for groundwater and air contamination. Specifically, the Complaint focuses on per- and polyfluoroalkyl substances ("PFAS"), which allegedly leach into groundwater and contaminate drinking water supplies. The Complaint specifically excludes aqueous film-forming foam ("AFFF"), which are used at airports and military bases to extinguish liquid fuel fires. The State of Maryland brought a separate complaint regarding AFFF that was subject to multidistrict litigation ("MDL") and has now been transferred out of this District. In this case (the non-AFFF PFAS case), this Court previously granted a stay awaiting a determination of whether Defendant 3M's motion to transfer under MDL would be granted. The Judicial Panel

1

on Multidistrict Litigation ("JPML") issued an Order denying transfer on October 4, 2023. (ECF No. 44.)

Because transfer was denied, the State's Motion to Remand to the Circuit Court for Baltimore City (ECF No. 23) must now be addressed. The issues regarding vacating this Court's stay order are now moot. The State argues that "neither basis that 3M presents—the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), and/or the assertion that the case arose on 'federal enclaves'—" adequately provide a basis for removal. (ECF No. 23-1 at 5.)[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the State's Motion to Remand to the Circuit Court for Baltimore City (ECF No. 23) is GRANTED and this case is REMANDED to the Circuit Court of Maryland for Baltimore City.

## BACKGROUND

The facts set forth below are viewed in the light most favorable to Plaintiff, as Defendant 3M bears the burden of demonstrating that removal is proper. *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 297 (4th Cir. 2008). The State of Maryland brought "this action against Defendants to address widespread contamination of its natural resources—particularly the drinking water supplies upon which its citizens depend—with toxic per- and polyfluoroalkyl substances ('PFAS'), including but not limited to perfluorooctane sulfonic acid ('PFOS') and perfluorooctanoic acid ('PFOA')." (ECF No. 5 ¶ 1.) "PFAS are highly fluorinated synthetic chemical compounds that include carbon chains containing at least one

---

[1] Unless otherwise indicated, this Memorandum Order cites to the ECF generated page number rather than the page number at the bottom of the parties' various submissions.

carbon atom on which all hydrogen atoms are replaced by fluorine atoms." (*Id.* ¶ 29.) Defendants are manufacturers who have allegedly "designed, manufactured, marketed, and sold products that contain PFAS ('PFAS Products')," including "food packaging, carpeting, cookware, clothing, and upholstery." (*Id.* ¶ 2–3.) According to the Complaint, "[t]he PFAS family, including PFOS and PFOA, has characteristics that cause extensive and long-lasting environmental contamination." (*Id.* ¶ 30.) Defendants allegedly "knew for decades that their PFAS were toxic and posed significant risks to human health and the environment," and they allegedly "knew specifically that their PFAS were reaching drinking water supplies and accumulating in people's bodies as they were exposed to the chemicals over time." (*Id.* ¶ 4–5.) The Complaint alleges that Defendants "have caused significant PFAS contamination in the State's drinking water, groundwater, surface water, soil, sediment, wildlife, other natural resources, and property held in trust or otherwise owned by the State." (*Id.* ¶ 8.) The Complaint further alleges "that exposure to PFAS may lead to significant negative health effects," including decreased fertility, developmental delays, increased risk of some cancers, hormonal changes, and increased cholesterol levels. (*Id.* ¶ 10.)

On May 30, 2023, "[t]he State filed the instant Complaint in the Circuit Court for Baltimore City, seeking damages to cover the costs of PFAS-related environmental restoration, remediation, and testing, and also equitable relief for abatement." (ECF No. 23-1 at 7.) The 11-count Complaint raised state-law claims for products liability, public nuisance, trespass, negligence, violations of Maryland's Environmental Article, and fraudulent transfer. (ECF No. 5.) The Complaint included a footnote explaining that the term PFAS, as used in the Complaint, does not "include aqueous film-forming foam ('AFFF') or fluorosurfactants that

3

were designed for and specifically incorporated into AFFF, which are the subject of a separate action." (*Id.* at 3 n.2.) Accordingly, the Complaint alleges that the State, in this action, does not "seek any remediation, restoration, damages, or any other relief related to any PFAS contamination caused by AFFF or fluorosurfactants when used as ingredients of AFFF. The State's claims with respect to AFFF are the subject of a separate action." (*Id.* ¶ 13.)

On July 10, 2023, Defendant 3M filed a notice of removal from the Circuit Court for Baltimore City. (ECF No. 1.) On August 1, 2023, Defendant 3M moved to stay this action pending a transfer decision by the Judicial Panel on Multidistrict Litigation ("JPML"). (ECF No. 17.) This Court granted the motion to stay on August 2, 2023. (ECF No. 18.) On August 9, 2023, the State moved for reconsideration on this Court's stay order while also moving to remand the case back to state court. (ECF No. 23.) On October 4, 2023, the JPML denied 3M's motion to transfer. (ECF No. 44.) Accordingly, the State's motion for reconsideration is now moot, and the Motion to Remand is ripe for review.

**STANDARD OF REVIEW**

A defendant in a state civil action may remove the case to federal court if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)-(c). Additionally, the federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes removal of "[a] civil action or criminal prosecution that is commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under the officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Once an action is removed to federal court, the plaintiff may file a motion

4

to remand the case to state court if there is a contention that jurisdiction is defective. 28 U.S.C. § 1447(c). When considering motions to remand, courts must interpret the federal officer removal statute broadly. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). It is well established that the party seeking removal bears the burden of establishing jurisdiction in the federal court. *Johnson v. Advance America*, 549 F.3d 932, 935 (4th Cir. 2008).

## ANALYSIS

### I. Federal Officer Removal

To sustain removal under Section 1442, a defendant must satisfy three elements. First, the defendant must demonstrate that it is "an officer of the United States or 'acting under' a federal officer within the meaning of the statute." *Mayor and City Council of Balt. v. BP P.L.C.*, 388 F. Supp. 3d 538, 567 (D. Md. 2019) (citing *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017)). Second, the defendant must establish a causal nexus between its challenged conduct and official authority by showing that the conduct occurred "for or relating to" official federal authority. *Id.* (citing 28 U.S.C. § 1442(a)(1)). Finally, the defendant must also assert "a colorable federal defense." *Id.* (citing *Sawyer*, 395 U.S. at 254). While the court must construe facts alleged in support of the defendant's colorable federal defense as true, the defendant bears the burden to allege facts sufficient to allow the court to conclude that such a defense is plausible. *North Carolina v. Ivory*, 906 F.2d 999, 1001 (4th Cir. 1990); *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). "The central purpose of the federal officer removal statute is to protect the federal government and its operations from potential interference by the states through proceedings in state court." *Illinois ex rel. Raoul v. 3M Co.*, No. 422CV04075SLDJEH, 2023 WL

6160610, at *2 (C.D. Ill. Sept. 21, 2023) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)).

3M attempts to sustain federal officer removal under the government contractor defense. "A government contractor is entitled to removal under Section 1442 when" it satisfies the federal officer removal requirements. *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017). The third element for removal, "a colorable federal defense," may be met by the government contractor defense, which exempts government contractors from liability for design defects in military equipment "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). However, "[s]imply asserting a federal defense is not, on its own, sufficient to show removal jurisdiction under § 1442(a)(1). Rather, § 1442(a)(1) also requires that the plaintiff's claims have a nexus to the defendant's acts under federal authority." *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 229 (D.N.H. 2023) (citing *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)).

3M's government contactor defense relies on its production of MilSpec AFFF, which is AFFF "that 3M and others developed and sold to the U.S. military in accordance with rigorous military specifications ('MilSpec') issued by the Department of Defense ('DoD')." (ECF No. 1 ¶ 2.) In this case, 3M has expressly disclaimed "any relief . . . related to any PFAS contamination caused by AFFF or fluorosurfactants when used as ingredients of AFFF." (ECF No. 5 ¶ 13.) That includes 3M's alleged basis for removal, MilSpec AFFF—a chemical

6

that 3M asserts it had official authority to manufacture. By excluding MilSpec AFFF and all other types of AFFF from its Complaint, the State has abandoned any claims in this case that would allow 3M to utilize the government contractor defense. The State's disclaimer here is effective. In three identical cases, federal courts have remanded to state court due to similar disclaimers. *See New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 220 (D.N.H. 2023) ("The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF."); *Maine v. 3M Co.*, No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) ("[T]he federal officer defense will not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves Non-AFFF sources."); *Illinois ex rel. Raoul v. 3M Co.*, No. 422CV04075SLDJEH, 2023 WL 6160610, at *2 (C.D. Ill. Sept. 21, 2023) ("By renouncing all claims stemming from a contractor's work for the federal government, it no longer becomes necessary to assert the federal government contractor defense."). Those courts found that "[c]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Illinois*, 2023 WL 6150510, at *5 (quoting *Reinbold v. Advanced Auto Parts, Inc.*, No. 18-CV-605-SMY-DGW, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018)); *see also Maine*, 2023 WL 4758816, at *10 ("Where express disclaimers are made, 'federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based.'" (quoting *Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D. Del. July 16, 2014))).

Because the State has expressly disclaimed any AFFF-related claims, 3M cannot establish the requisite nexus between charged conduct and asserted official authority. *Northrop*, 865 F.3d at 186. In this case, as in *New Hampshire*, *Maine*, and *Illinois*, the explicit exclusion of AFFF from this lawsuit renders it "impossible for Defendant to be held liable for damages stemming from its actions under federal authority, and so the requisite connection or association is missing." *Illinois*, 2023 WL 6150510, at *6. 3M therefore fails to demonstrate the requisite nexus or colorable federal defense to sustain removal to federal court under the federal officer removal statute. Accordingly, the State's Motion to Remand (ECF No. 23) shall be GRANTED and this case shall be REMANDED to the Circuit Court for Baltimore City.

## II.     Federal Enclave Jurisdiction

As an alternative basis for removal, 3M asserts that the State's claims in this case "have arisen in part on federal enclaves," thereby allowing federal enclave jurisdiction. (ECF No. 1 ¶ 5.) Federal enclave jurisdiction provides original federal jurisdiction, which therefore would allow removal under 28 U.S.C. § 1441(a). "[F]ederal-question jurisdiction tied to federal enclaves 'generally requires "that *all* pertinent events t[ake] place on a federal enclave."'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 219 (4th Cir. 2022) (second alteration in original) (quoting *Bd. of Cnty. Cmm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022)). However, 3M fails to demonstrate that all pertinent events related to the issues in this case occurred on a federal enclave. Instead, it asserts only that "[s]ome federal facilities in Maryland . . . are or were federal enclaves when AFFF and/or other PFAS or PFAS-containing products were released from such facilities." (ECF No. 1 ¶ 59.) The fact some of the State's claims may have arisen in part from some federal enclaves is insufficient

to grant federal enclave jurisdiction. Quite simply, 3M's allegations are insufficient to meet the requirements for federal enclave jurisdiction. *See Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44, 58 (1st Cir. 2022) (finding allegation that "a big chunk" of pertinent events occurred on federal enclaves insufficient for federal enclave jurisdiction). Moreover, in this case, as in *Maine*, even if some of the claims arose in part from locations that "could fit within federal enclave jurisdiction, the State has disclaimed any AFFF claims, including those arising from a federal enclave, so the argument circles back to the State's disclaimer." *Maine*, 2023 WL 4758816, at *10. 3M therefore cannot remove under the basis of federal enclave jurisdiction. Accordingly, this case shall be REMANDED to the Circuit Court for Baltimore City.

## CONCLUSION

For the reasons stated above, it is this 12th day of February, 2024, hereby ORDERED that:

1. Plaintiff's Motion to Remand to the Circuit Court for Baltimore City (ECF No. 23) is GRANTED;

2. This case shall be REMANDED to the Circuit Court for Baltimore City;

3. The Clerk shall CLOSE this case; and

4. A copy of this Memorandum Order shall be sent to counsel of record.

/s/
Richard D. Bennett
United States Senior District Judge