**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

|  |  |
|---|---|
| STATE OF MARYLAND,<br><br> Plaintiff,<br><br> v.<br><br>3M COMPANY; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; EIDP, INC., (f/k/a E.I. DU PONT DE NEMOURS AND COMPANY); AND THE CHEMOURS COMPANY,<br><br> Defendants. | Case No. 1:23-cv-01836-RDB |

**MEMORANDUM OF LAW IN SUPPORT OF
3M COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

    I.    The State's Allegations Of PFAS Contamination ...................................................... 4

    II.    The State's First-Filed Suit And The AFFF Multidistrict Litigation......................... 5

LEGAL STANDARD............................................................................................................. 8

ARGUMENT ........................................................................................................................ 9

    I.    The Complaint Should Be Dismissed Because It Raises The Same Claim As The State's First-Filed AFFF Complaint ......................................................................... 9

    II.    The Complaint Should Be Dismissed Because It Fails To Allege That 3M Caused Any Cognizable Injury.......................................................................................... 13

    III.    The State's Negligence, Design-Defect, And Failure-To-Warn Claims Fail Because 3M Did Not Owe A Duty To The State.................................................... 19

    IV.    The State's Design-Defect Claim Fails Because The State Does Not Allege Harm To End Users. ...................................................................................................... 20

    V.    The Trespass Claims Fail For Additional Reasons................................................ 21

    VI.    The Public-Nuisance Claim Fails For Multiple Reasons....................................... 25

    VII.    The Title 9, Subtitle 3, Claim Should Be Dismissed Because The Complaint Does Not Allege That 3M "Discharged" PFAS Into The Waters Of This State ............. 27

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*,
  915 F.2d 1355 (9th Cir. 1990) ....................................................................................30

*Ali v. Hogan*,
  26 F.4th 587 (4th Cir. 2022) .......................................................................................14

*Alston v. Experian Info. Sols., Inc.*,
  No. TDC-14-3957, 2016 WL 901249 (D. Md. Mar. 3, 2016), *aff'd*, 680 F.
  App'x 243 (4th Cir. 2017) ........................................................................................9, 13

*Anand v. Ocwen Loan Servicing, LLC*,
  754 F.3d 195 (4th Cir. 2014) .........................................................................................8

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018)........................................................................6, 7

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  No. 2:18-CV-3487-RMG, 2023 WL 3521025 (D.S.C. May 5, 2023)..............................26

*Babb v. Lee Cnty. Landfill SC, LLC*,
  747 S.E.2d 468 (S.C. 2013) .........................................................................................25

*Barnstable Cnty. v. 3M Co.*,
  No. CV 17-40002, 2017 WL 6452245 (D. Mass. Dec. 18, 2017) ..................................18

*Bottini v. Dep't of Fin.*,
  450 Md. 177 (2016) .....................................................................................................28

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988).......................................................................................................6

*Brightview Grp., LP v. Glynn*,
  No. CV SAG-21-3027, 2022 WL 743937 (D. Md. Mar. 11, 2022) ...............................12

*Brinson v. Raytheon Co.*,
  571 F.3d 1348 (11th Cir. 2009) ......................................................................................6

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001)..........................................................................................26

*City of Bloomington v. Westinghouse Elec. Corp.*,
  891 F.2d 611 (7th Cir. 1989) ........................................................................................26

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004)..........................................................................................26

ii

*Cnty. of Johnson v. U.S. Gypsum Co.*,
580 F. Supp. 284 (E.D. Tenn. 1984) ......................................................................................26

*Coppage v. Orlove*,
262 Md. 665 (1971) (per curiam) ...........................................................................................13

*Dine v. W. Exterminating Co.*,
No. CIV.A. 86-1857-OG, 1988 WL 25511 (D.D.C. Mar. 9, 1988) ......................................25

*Doddy v. Oxy USA, Inc.*,
101 F.3d 448 (5th Cir. 1996) .................................................................................................18

*Doe v. Pharmacia & Upjohn Co.*,
388 Md. 407 (2005) ...............................................................................................................19

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ...................................................................................................8

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
87 F.4th 315 (6th Cir. 2023) .................................................................................................18

*Eagle-Picher Indus. v. Balbos*,
326 Md. 179 (1992) ...............................................................................................................16

*Ehrlich v. Perez*,
394 Md. 691 (2006) ...............................................................................................................30

*Emerald Coast Utils. Auth. v. 3M Co.*,
746 F. Supp. 2d 1216 (N.D. Fla. 2010) .................................................................................15

*Exxon Mobil Corp. v. Albright*,
433 Md. 303 (2013) ..........................................................................................................22, 23

*Fleming v. Bank of England*,
No. 8:24-CV-01823-PX, 2025 WL 1707275 (D. Md. June 17, 2025) .....................................9

*Ford Motor Co. v. Gen. Accident Ins. Co.*,
365 Md. 321 (2001) ...............................................................................................................16

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ...................................................................................................8

*Gourdine v. Crews*,
405 Md. 722 (2008) ...........................................................................................3, 19, 20, 21

*Gregg v. Richmond*,
No. CIV.A. DKC 2001-1212, 2004 WL 257080 (D. Md. Feb. 11, 2004) ...............................29

*Grueff v. Vito*,
229 Md. App. 353 (2016) .......................................................................................................17

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) ..................................................................................................23

*Hartford Ins. Co. v. Manor Inn*,
335 Md. 135 (1994) ................................................................................................16

*Howard Cnty. v. Davidsonville Area Civic & Potomac River Ass'ns*,
72 Md. App. 19 (1987) ...........................................................................................30

*State ex rel. Hunter v. Johnson & Johnson*,
499 P.3d 719 (Okla. 2021)......................................................................................26

*InfoTek Corp. v. Preston*,
626 F. Supp. 3d 885 (D. Md. 2022)........................................................................16

*JBG/Twinbrook Metro Ltd. P'ship v. Wheeler*,
346 Md. 601 (1997) ................................................................................................24

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) ..................................................................................23

*Lee v. Norfolk S. Ry. Co.*,
802 F.3d 626 (4th Cir. 2015) .................................................................................2, 9

*Lockshin v. Semsker*,
412 Md. 257 (2010) ................................................................................................28

*Lohrmann v. Pittsburgh Corning Corp.*,
782 F.2d 1156 (4th Cir. 1986) ................................................................................17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................14

*Lundregan v. Off. of Pub. & Indian Housing Dep't of Housing & Urban Affairs*,
No. CV PJM-20-1242, 2020 WL 2747822 (D. Md. May 26, 2020) ......................12

*Maine v. 3M Co., Inc.*,
159 F.4th 129 (1st Cir. 2025)................................................................................9, 12

*Maryland v. 3M Co.*,
--- S. Ct. ---, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026)........................2, 8

*Maryland v. 3M Co.*,
130 F.4th 380 (4th Cir. 2025) ...............................................1, 2, 6, 7, 10, 11, 12

*Maryland v. 3M Co.*,
2024 WL 1152568 (D. Md. Feb. 12, 2024) .............................................................7

*Maryland v. Exxon Mobil Corp.*,
406 F. Supp. 3d 420 (D. Md. 2019)...............................16, 18, 19, 22, 23, 24, 28

*Mayor of Balt. v. B.P. P.L.C.*,
No. 24-C-18-004219, 2024 WL 3678699 (Md. Cir. Ct. Balt. City July 10,
2024) ..........................................................................................................20, 24, 26

*Mayor of Balt. v. PepsiCo, Inc.*,
No. C-24-CV-24-001003 (Md. Cir. Ct. Balt. City July 21, 2025), Slip Op. ..............20, 21, 24

*Mazda Motor of Am., Inc. v. Rogowski*,
 105 Md. App. 318 (1995) ...........................................................................................................16

*McReady v. O'Malley*,
 No. RWT 08CV2347, 2010 WL 917821 (D. Md. Mar. 8, 2010) ............................................13

*Md. Dep't of the Env't v. GenOn Ash Mgmt., LLC*,
 No. CIV. PJM 10-0826, 2013 WL 2637475 (D. Md. June 11, 2013) ....................................29

*Nissan Motor Corp. v. Md. Shipbuilding & Drydock Co.*,
 544 F. Supp. 1104 (D. Md. 1982) ...........................................................................................25

*Paskar v. City of New York*,
 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014) ...................................................................................4

*Paxton v. Dettelbach*,
 105 F.4th 708 (5th Cir. 2024) ..................................................................................................23

*Penelas v. Arms Tech., Inc.*,
 No. 99-1941 CA-06, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*,
 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) ............................................................................26

*Philips v. Pitt Cnty. Mem'l Hosp.*,
 572 F.3d 176 (4th Cir. 2009) .....................................................................................................8

*Pittway Corp. v. Collins*,
 409 Md. 218 (2009) ............................................................................................................16, 18

*Pueschel v. United States*,
 369 F.3d 345 (4th Cir. 2004) .....................................................................................................9

*Rhodes v. E.I. du Pont de Nemours & Co.*,
 657 F. Supp. 2d 751 (S.D. W. Va. 2009)..................................................................................25

*Rockland Bleach & Dye Works Co. v. H. J. Williams Corp.*,
 242 Md. 375 (1966) ..................................................................................................................24

*Rousseau v. Howard Cnty.*,
 No. CIV. JFM-09-CV-1079, 2009 WL 4018551 (D. Md. Nov. 19, 2009), *aff'd
 on other grounds*, 425 F. App'x 193 (4th Cir. 2011) ................................................................9

*Royal Inv. Grp., LLC v. Wang*,
 183 Md. App. 406 (2008) .........................................................................................................23

*Santo v. Santo*,
 448 Md. 620 (2016) ..................................................................................................................16

*Saunders v. Sappi N. Am., Inc.*,
 No. BCD-CIV-2023-00033, 2024 WL 1908964 (Me. Bus. & Consumer Ct.
 Jan. 2, 2024).............................................................................................................................18

*Scapa Dryer Fabrics, Inc. v. Saville*,
 418 Md. 496 (2011) ..................................................................................................................16

*Schuman v. Greenbelt Homes, Inc.*,
   212 Md. App. 451 (2013) .............................................................................................25

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,
   329 F. Supp. 2d 574 (D. Md. 2004) .............................................................................13

*Sensormatic Sec. Corp. v. Sesormatic Elecs. Corp.*,
   452 F. Supp. 2d 621 (D. Md. 2006) .......................................................................12, 13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).................................................................................................2, 14

*SPS Ltd. Partnership LLLP v. Sparrows Point, LLC*,
   No. CV JFM-14-589, 2017 WL 3917153 (D. Md. Sep. 6, 2017)...............................24

*State v. 3M Co.*,
   2020 WL 13368654 (Vt. Super. May 28, 2020) .........................................................23

*State v. 3M Co.*,
   2024 WL 5108255 (Me. B.C.D. Dec. 12, 2024)..........................................................23

*State v. Lead Indus. Ass'n*,
   951 A.2d 428 (R.I. 2008) .............................................................................................26

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)................................................................................................14, 15

*Tadjer v. Montgomery Cnty.*,
   300 Md. 539 (1984) .................................................................................................16, 27

*Tidler v. Eli Lilly & Co.*,
   851 F.2d 418 (D.C. Cir. 1988) .....................................................................................18

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
   984 F.2d 915 (8th Cir. 1993) .......................................................................................26

*Town of Westport v. Monsanto Co.*,
   877 F.3d 58 (1st Cir. 2017)..........................................................................................16

*In re Under Armour Sec. Litig.*,
   540 F. Supp. 3d 513 (D. Md. 2021) ...............................................................................4

*United States v. Union Corp.*,
   277 F. Supp. 2d 478 (E.D. Pa. 2003) ...........................................................................30

*Valk Mfg. Co. v. Rangaswamy*,
   74 Md. App. 304 (1988), *rev'd*, 317 Md. 185 (1989).................................................19

*Wietzke v. Chesapeake Conf. Ass'n*,
   421 Md. 355 (2011) .......................................................................................................27

**Statutes**

28 U.S.C. § 1442(a)(1).......................................................................................................1, 6

vi

Md. Code Ann., Env't § 9-101 ...............................................................................27

Md. Code Ann., Env't § 9-322 ..........................................................................16, 27

Md. Code Ann., Env't § 9-405 ...............................................................................16

## Other Authorities

Dan B. Dobbs et al., *The Law of Torts* (2d ed. 2023) ...........................................25

EPA, *EPA Settles Case Involving 3M Voluntary Disclosures of Toxic Substances Violations* (Apr. 25, 2006) ......................................................................................4

John C. Nagle, *CERCLA, Causation and Responsibility*, 78 Minn. L. Rev. 1493 (1994).....................................................................................................................16

Random House Dictionary of the English Language (1966).......................................28

Webster's Seventh New Collegiate Dictionary (1976).................................................28

Webster's Third New International Dictionary (1981).................................................28

**INTRODUCTION**

The State of Maryland (the "State") has "filed two overlapping lawsuits" against 3M Company ("3M") and several entities associated with the former E.I. Du Pont De Nemours and Company (collectively "DuPont") based on alleged contamination of its natural resources by per- and polyfluoroalkyl substances ("PFAS"), specifically perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"). *Maryland v. 3M Co.*, 130 F.4th 380, 385 (4th Cir. 2025). There is "only" one "meaningful difference" between the complaints in the two suits, *id.*:  In its first-filed suit—which 3M removed to federal court, and which is now pending in federal court in multi-district litigation ("MDL")—the State seeks to recover for alleged contamination of its natural resources by PFAS stemming only from aqueous film-forming foam ("AFFF").  In this case, the State seeks to recover for alleged contamination of the very same natural resources by PFAS stemming only from products *other than* AFFF.

3M timely removed this case to federal court as well under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  But here, unlike its first-filed suit, the State opposed removal, arguing that its disclaimer of recovery for injury stemming from AFFF "precluded a connection between 3M's PFAS contamination and its federal authority."  *Maryland*, 130 F.4th at 386.  This Court agreed with the State, giving "Maryland's disclaimer dispositive effect."  *Id.*  On appeal, the Fourth Circuit reversed, holding that despite the State's "artful crafting of [its] complaint[]," the conduct at issue in this case is nonetheless "related to the company's federal work" producing AFFF pursuant to precise military specifications ("MilSpec").  *Id.* at 393.  In so holding, the Fourth Circuit credited 3M's plausible allegations that "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways" and that "[s]ome of the PFAS contamination charged by the State[] came from [3M's] Military AFFF."  *Id.* at 390.  Accordingly, the Fourth Circuit remanded the case

1

to this Court, and, on March 2, 2026, the U.S. Supreme Court denied the State's petition for certiorari. *Id.*; *Maryland v. 3M Co.*, --- S. Ct. ---, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026). 3M now moves this Court to dismiss all of the State's claims in this twin case against 3M for multiple independent reasons.[1]

*First*, the rule against claim-splitting requires dismissal of this suit. That rule "prohibits a plaintiff from prosecuting its case piecemeal" and so requires "that all claims arising out of a single wrong [must] be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quotation marks omitted). Just so here. As the Fourth Circuit's opinion makes clear, this Complaint brings the "same seven state-law causes of action" and seeks the same recovery for the same alleged injury (PFAS contamination of Maryland's natural resources) from the same allegedly wrongful conduct that the State says it seeks to vindicate in its first-filed complaint. *Maryland*, 130 F.4th at 386. Thus, the State's "artful crafting" cannot obscure that these two suits assert a single claim that must be brought in a single case. *Id.* at 393. The Court should dismiss this Complaint or at a minimum stay this case until the State's first-filed action has been resolved.

*Second*, the Complaint fails to allege that 3M caused any cognizable injury. That failure is dispositive, because the State must plead injury and causation in order to establish Article III standing and allege the elements of its claims. As to injury, while the State broadly alleges PFAS contamination, the State fails to adequately identify the specific sites that are contaminated with PFAS, and it fails to identify either the purportedly excessive levels of PFAS present at each site or the levels of PFAS that the State contends would give rise to actual harm. As such, the State fails to allege a sufficiently "concrete and particularized" injury to establish standing. *Spokeo, Inc.*

---

[1] 3M has also moved to transfer this case to the MDL and to stay this case pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML"). 3M respectfully submits that whether this case is stayed, transferred, or dismissed, this case should not proceed in this Court at this time.

*v. Robins*, 578 U.S. 330, 339 (2016). As to causation, the State alleges that its natural resources are contaminated by "PFAS," "PFOA+PFOS," or "PFAS Products" generally, but at the same time acknowledges that 3M was not the only manufacturer of PFAS, PFAS-containing products, or even PFOA and PFOS. The Complaint thus fails to allege that 3M, rather than DuPont or some other PFAS manufacturer, caused any of the generalized harms asserted.

*Third*, the State's negligence, design-defect, and failure-to-warn claims also fail for lack of a cognizable legal duty. Maryland courts have held that defendants do not owe a duty to "an indeterminate class of people," *Gourdine v. Crews*, 405 Md. 722, 750 (2008), but that is exactly what the State's theory of liability requires here.

*Fourth*, the State's design-defect claim independently fails because it is not predicated on any alleged harm to the end-users of PFAS. Maryland law forecloses design-defect liability where the product is not alleged to be harmful to end-users. *Id.* at 740.

*Fifth*, the State's trespass claims fall short for multiple independent reasons: The State does not allege that it has exclusive possession over any of the allegedly contaminated (and unidentified) sites. It does not to allege that 3M had control over the PFAS or PFAS-containing products at the time that they allegedly contaminated natural resources. And Maryland law has never recognized a claim of trespass predicated (as here) on an intangible invasion.

*Sixth*, the Complaint does not state a public-nuisance claim because the manufacture and sale of consumer products is not actionable as a nuisance under Maryland law, and the State cannot seek relief in nuisance for privately-owned land.

*Finally*, the State fails to state a claim against 3M under Section 9-322 of the Maryland Code's Environment Article because the Complaint does not allege that *3M* "discharge[d]" PFAS into Maryland waters. Instead, any alleged discharge of PFAS here was by unidentified third

3

parties who used and disposed of PFAS-containing products in various ways.

For these reasons, the Court should dismiss all of the claims against 3M.

**BACKGROUND**

**I.    The State's Allegations Of PFAS Contamination**

PFAS are a group of "synthetic chemical[s]" with carbon-fluorine bonds.  Compl. ¶ 29. According to the Complaint, PFAS have been used in "countless consumer and commercial products."  *Id.* ¶ 3.  That is because PFAS have "unique chemical properties," *id.* ¶ 29, that make them long-lasting and "resistan[t] to grease, stains, heat, and other harsh elements," *id.* ¶ 3.  PFAS are also key components of AFFF, a firefighting foam used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires.  ECF No. 1 ¶¶ 2, 41.

While there are thousands of kinds of PFAS, the Complaint "focuses on" two:  PFOS and PFOA.  Compl. ¶ 1 n.1.  According to the Complaint, 3M "manufactured PFOS and PFOA" from "the 1940s" "through the early 2000s."  Compl. ¶¶ 42, 44, 48.  In 2000, 3M announced that "it would phase out its PFOS, PFOA, and related products."  *Id.* ¶ 72.  Subsequently in 2000, 3M stopped manufacturing PFOS in the United States, and 3M "phased out all [PFOS] chemistries on a global basis by the end of 2002."  EPA, *EPA Settles Case Involving 3M Voluntary Disclosures of Toxic Substances Violations* (Apr. 25, 2006), http://tinyurl.com/yc78h4ab; *see* Compl. ¶ 72.[2] Also by 2002, 3M "ceased manufacturing PFOA."  *Id.* ¶¶ 48, 92.

The Complaint further alleges that 3M's co-defendant DuPont also "had extensive experience with PFAS."  Compl. ¶ 46.  DuPont began using PFOA in a variety of products "in the

---

[2] A court may take judicial notice of "matters of public record" in ruling on a motion to dismiss. *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513, 519 (D. Md. 2021); *see also Paskar v. City of New York*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014) (court may take judicial notice of "[o]fficial government reports and other types of government records").

early 1950s" and its "use of PFOA expanded over time."  *Id.* ¶¶ 46–47.  DuPont began manufacturing PFOA "in the mid-2000s" and "phased out the manufacture and use of PFOA by 2015."  *Id.* ¶¶ 48, 50.  The State does not allege that 3M and DuPont were the exclusive manufacturers of PFOS and PFOA.

The State generally alleges that PFAS have been released into the environment "through discharges and emissions from industrial facilities, the use and disposal of PFAS-containing products, landfills," and "wastewater treatment facilities."  Compl. ¶ 7.  Although the State alleges that 3M produced PFAS-containing products and sold PFOS and PFOA to "third parties to use in their own products," *id.* ¶ 45, the State does not allege that 3M controlled the entities or facilities responsible for discharges and emissions of PFAS.

According to the Complaint, PFAS have contaminated groundwater, surface water, coastal resources, estuaries, sediments, soil, submerged land, and biota in Maryland.  Compl. ¶¶ 112–34.  The Complaint alleges that PFAS are "mobile and persistent in water" and can "spread" from a discharge point.  *Id.* ¶ 123.  The State does not identify particular sites that PFAS have allegedly contaminated or at what levels.

The State seeks to recover from 3M and DuPont for "the harms done to Maryland, its citizens, and its natural resources."  Compl. ¶ 13.  The State brings this suit "directly in its own right," "in its *parens patriae* capacity," and "as trustee of Maryland's natural resources."  *Id.* ¶ 14.  Against 3M, the State asserts claims for strict products liability–defective design (Count I); strict products liability–failure to warn (Count II); public nuisance (Count III); trespass (Count IV); negligence (Count V); and violation of two statutory provisions (Counts VI and VII).

## II.    The State's First-Filed Suit And The AFFF Multidistrict Litigation

This suit is not the first one that the State filed against 3M.  Before it filed this suit, the State filed another "overlapping" action against 3M and DuPont based on nearly identical

allegations seeking to recover for alleged PFAS contamination of natural resources across the State. *Maryland*, 130 F.4th at 385.  "The *only meaningful difference* in the complaints is that one"—the first-filed suit—"was directed toward 3M's PFAS production through its manufacture of AFFF generally" while this suit "was directed towards 3M's production of other PFAS-containing products and specifically excluded any AFFF."  *Id.* (emphasis added).

3M removed both cases to federal court under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1).  3M plausibly alleged that both suits relate to its manufacture and sale of AFFF to the U.S. military in accordance with military specifications ("MilSpec") issued by the Department of Defense.  As the removal notices explained, the alleged PFAS contamination in both suits constitutes a single harm involving the indistinguishable commingling of the *same* PFAS compounds from both AFFF and non-AFFF sources.  *Maryland*, 130 F.4th at 386.  Because the State's alleged contamination stems in part from MilSpec AFFF, 3M asserted a federal government-contractor defense to liability.[3]  *Id.*  These allegations make both cases removable.

The State's AFFF suit was transferred to the AFFF MDL without objection by the State. Plaintiffs in that MDL—including States, public water providers, and private individuals—have brought an array of similar suits against AFFF manufacturers generally alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS "into local groundwater and contaminated drinking water."  *In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  The JPML centralized those AFFF actions into a single MDL in the District of South Carolina.  *Id.* at 1396.  The JPML

---

[3] The federal government-contractor defense immunizes government contractors from state tort liability when they produce equipment for the U.S. military pursuant to "reasonably precise specifications" issued by the government.  *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).

concluded that the consolidation of AFFF suits would "promote the just and efficient conduct of this litigation." *Id.* at 1394. That is because, among other things, the JPML anticipated that "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions," *id.*, which is what the manufacturers, including 3M, have done.

The State objected to the transfer of this case to the MDL with its AFFF twin, the JPML declined to transfer this case based on the circumstances at that time, and this Court granted the State's motion to remand. *Maryland v. 3M Co.*, 2024 WL 1152568 (D. Md. Feb. 12, 2024). In doing so, the Court gave the State's disclaimer of recovery for 3M's conduct related to the manufacture of AFFF "dipositive effect" and concluded that 3M's "federal defense would not be present" in this action. *Maryland*, 130 F.4th at 386.

On appeal, the Fourth Circuit disagreed and confirmed that "3M's federal work" in producing AFFF is "inextricably related to the charged conduct" at issue in this action, which directly implicates 3M's government contractor defense. *Id.* at 391. In particular, the Fourth Circuit credited 3M's allegations regarding the overlap between AFFF and non-AFFF, including that "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways" and that "[s]ome of the PFAS contamination charged by the State[] came from [3M's] Military AFFF." *Id.* at 390. Thus, the Fourth Circuit confirmed that "[w]hatever factfinder" ultimately adjudicates this case will have to "disentangle" at least two questions related to AFFF at any given site: "whether certain PFAS contamination came from 3M's Military AFFF" and "how much of a given sample of PFAS contamination came from Military AFFF." *Id.* at 391. The Fourth Circuit vacated this Court's remand order. *Id.* at 393.

The Fourth Circuit denied Maryland's motion for rehearing en banc. *See* Order, *State of Maryland v. 3M Co.*, No. 24-1218 (4th Cir. May 28, 2025), ECF No. 66. The State thereafter petitioned the U.S. Supreme Court for a writ of certiorari, which the court recently denied. *Maryland*, 2026 WL 568301. Following that decision, 3M tagged this case for inclusion in the MDL given its clear overlap with its AFFF twin suit. Although the clerk of the JPML administratively denied a Conditional Transfer Order on March 5, 2026, 3M has moved the JPML for an order of transfer.[4] 3M now moves to dismiss the Complaint.

## LEGAL STANDARD

A motion to dismiss "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quotation marks omitted). The Court does not accept "wholly vague and conclusory allegations," *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 754 (4th Cir. 2013) (quotation marks omitted), or "legal conclusion[s] couched as . . . factual allegation[s]," *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quotation marks omitted).

---

[4] JPML Rule 7.1(b)(i) provides that "[i]f the Clerk of the Panel determines that a potential tag-along action is not appropriate for inclusion in an MDL proceeding and does not enter a [Conditional Transfer Order ("CTO")], an involved party may move for its transfer" and ask the Panel itself to determine whether the case warrants transfer. The Clerk's initial determination does not bind the Panel, which has granted motions to transfer even after the Clerk declined to issue CTOs.

## ARGUMENT

### I.    The Complaint Should Be Dismissed Because It Raises The Same Claim As The State's First-Filed AFFF Complaint

It is well established that a party cannot "litigate his case piecemeal." *Fleming v. Bank of England*, No. 8:24-CV-01823-PX, 2025 WL 1707275, at *3 (D. Md. June 17, 2025). Rather, "all claims arising out of a single wrong [must] be presented in one action." *Lee*, 802 F.3d at 635. The facts underlying each claim "need not be identical for the rule against claim splitting to apply," *Rousseau v. Howard Cnty.*, No. CIV. JFM-09-CV-1079, 2009 WL 4018551, at *2 (D. Md. Nov. 19, 2009), *aff'd on other grounds*, 425 F. App'x 193 (4th Cir. 2011), but instead need only "arise out of the same transaction or series of transactions or the same core of operative facts." *Id.* (quoting *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)).

This rule against claim-splitting "foster[s] judicial economy" and "protect[s] the parties from the vexation of concurrent litigation over the same subject matter." *Alston v. Experian Info. Sols., Inc.*, No. TDC-14-3957, 2016 WL 901249, at *3 (D. Md. Mar. 3, 2016), *aff'd*, 680 F. App'x 243 (4th Cir. 2017) (quotation marks omitted). The risk from duplicative litigation is especially acute in this case, where the two cases will otherwise proceed in two different courts—creating the potential for contrary findings on fundamental fact and legal issues as well as the risk of duplicative damages. When the State of Maine attempted the same tactic—bringing "two almost-identical suits against 3M Company" for alleged PFAS contamination in a failed effort to prevent removal under the federal-officer removal statute—the First Circuit rejected the State's claim-splitting strategy, holding "Maine's efforts to have two courts answer the same questions must fail." *Maine v. 3M Co., Inc.*, 159 F.4th 129, 131 (1st Cir. 2025).

9

### A.    The State Has Split A Single Claim Into Two Separate Lawsuits

The State has violated the rule against claim-splitting here by splitting its claim for alleged PFAS contamination into what the Fourth Circuit characterized as "two overlapping lawsuits":  its "AFFF" suit pending in the MDL and its "non-AFFF" suit pending in this Court.  *Maryland*, 130 F.4th at 385-86.  These two suits involve the same basic facts:  3M allegedly acted wrongfully in manufacturing and selling PFAS and PFAS-containing products, which allegedly led to the contamination of Maryland's natural resources with PFAS.  *Compare*, *e.g.*, Compl. ¶ 8 ("Defendants' unlawful and tortious acts and omissions with respect to their PFAS Products have caused significant PFAS contamination in the State's drinking water, groundwater, surface water, soil, sediment, wildlife, other natural resources, and property"), *with*, *e.g.*, State of Maryland v. 3M Co. et al., Case No. 24-c-23-002528 (Md. Cir. Ct. Balt. Cnty. May 30, 2023) ("AFFF Compl."). ¶ 6 ("Defendants' tortious and unlawful acts and omissions have caused significant PFAS contamination of the State's drinking water, groundwater, surface water, soil, sediment, wildlife, other natural resources, and property").

In each case, the State is seeking to recover for alleged PFAS contamination of the *same* natural resources, including groundwater, surface water, coastal resources, sediments, soil, and biota.  *Compare, e.g.*, Compl. ¶¶ 112–34, *with* AFFF Compl. ¶¶ 118–48.  To take just a few specific examples, both complaints reference the Chesapeake Bay, *compare* Compl. ¶¶ 99–102, 125–26, *with* AFFF Compl. ¶¶ 105–08, 131–32; and the same allegedly impacted species of wildlife in the Chesapeake Bay, *compare* Compl. ¶ 126 ("striped bass, blue crabs, and oysters"), *with* AFFF Compl. ¶ 134 ("striped bass, blue crabs, and oysters").  Both complaints allege PFAS contamination of "the State's drinking water sources," *compare* Compl. ¶ 138, *with* AFFF Compl. ¶ 157, and both include virtually identical allegations regarding 3M's knowledge and conduct regarding PFAS—regardless of whether those PFAS were incorporated into AFFF or non-AFFF

10

products, *compare* Compl. ¶¶ 51–74, *with* AFFF Compl. ¶¶ 59–77.  Finally, both complaints assert the same causes of action against 3M and request nearly identical relief.  *Compare* Compl. ¶¶ 93–134, 254–332 & pp. 79–81, *with* AFFF Compl. ¶¶ 99–148, 259–337 & pp. 85–87.  Thus, both suits seek recovery for the same (indivisible) harm and so violate the rule against claim-splitting.

**B.      The State's AFFF Disclaimer Does Not Render Its Claim-Splitting Permissible**

The State's "artful crafting of [its] complaints" to disclaim the *damages* flowing from the portion of the alleged PFAS contamination from AFFF products, *Maryland*, 130 F.4th at 385, 393, does not suffice to carve two *claims* out of one.  Each of the State's suits seeks to recover damages from the same two PFAS chemicals:  PFOS and PFOA.  *See* Compl. ¶ 1 & n.1; AFFF Compl. ¶¶ 1–2.  And PFOS or PFOA from an AFFF product is the same, respectively, as PFOS or PFOA from a non-AFFF product.  *See* Tr. of Status Conference 23:16–17, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873 (D.S.C. Apr. 25, 2024).  As the Fourth Circuit recognized, PFOS and PFOA "from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways," and "[s]ome of the PFAS contamination charged by the State[] came from [3M's] Military AFFF."  *Maryland*, 130 F.4th at 390.  So whether derived from AFFF or non-AFFF products, PFOS and PFOA are, respectively, indistinguishably commingled in the environment and therefore constitute a single alleged harm to the State's natural resources.

Rather than seeking relief for that indivisible harm in a single suit, the State has attempted to split its claim for relief in two—bringing one suit alleging harm from PFAS in AFFF products and another suit alleging harm from PFAS in non-AFFF products.  The State adopted this "strategy" in an attempt to avoid the removal of this case to federal court (which was unsuccessful), *Maryland*, 130 F.4th at 386, and in an effort to avoid its consolidation in the pending AFFF MDL (which is ongoing), as happened without opposition to the State's AFFF suit.  The problem for the State is

11

that "prosecuting its case piecemeal," as the State is attempting here, violates the rule against claim-splitting. *Lundregan v. Off. of Pub. & Indian Housing Dep't of Housing & Urban Affairs*, No. CV PJM-20-1242, 2020 WL 2747822, at *1 (D. Md. May 26, 2020) (quotation marks omitted).

The Fourth Circuit's reasoning demonstrates why the State's attempt to split its claims should be rejected. As the Fourth Circuit held, the State's AFFF disclaimer "notwithstanding", this case will inevitably implicate AFFF because AFFF-related PFAS is "inextricably related to [Maryland's] general allegations of PFAS" in the Complaint. *Maryland*, 130 F.4th at 392. Indeed, in order to decide 3M's federal contractor defense, the federal factfinder will need to "disentangle" at least "two pertinent questions": whether any PFAS contamination at any given site in Maryland was caused in part by AFFF, and if so, to what extent. *Id.* at 391; *accord Maine*, 159 F.4th at 138–39 (explaining Maine's "two almost-identical suits against 3M" will require a court to determine "whether and to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF"). The State's PFAS claim is therefore indivisible between AFFF and non-AFFF sources, and "[Maryland's] efforts to have two courts answer the same questions must fail." *Maine*, 159 F.4th at 131; *accord Maryland*, 130 F.4th at 389 (rejecting Maryland's and South Carolina's "attempts to immunize their complaints from" AFFF contamination) .

"[C]ourts faced with duplicative suits," such as the State has brought here, have several options: They "may stay the second suit, dismiss it without prejudice, [or] enjoin the parties from proceeding with it." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 & n.2 (D. Md. 2006) ("It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit."); *accord Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *6 (D. Md. Mar. 11, 2022) ("A motion to dismiss asserting a violation of the claim splitting doctrine is properly raised under Fed. R. Civ. P.

12

12(b)(6).")._5 Here, the Court should dismiss because the State filed its purported AFFF Complaint first. *See Sensormatic*, 452 F. Supp. 2d at 626–27 (explaining that, like res judicata, it is "the second suit" that is "barred" in "a claim splitting case"); *accord Alston*, 2016 WL 901249, at *5 (dismissing second filed suit). And the State would not be prejudiced by dismissal its Complaint because it could simply amend its AFFF Complaint to include these allegations.

### C.    At A Minimum, The Court Should Stay This Action

At the very least, the Court should stay this action. 3M should not have to defend against what is effectively the same claim—alleging the same injuries and requesting the same relief—in two separate but concurrent actions. Such duplication is a waste of both judicial and party resources and flies in the face of the goal promoted by the rule against claim splitting—"protect[ing] parties from the vexation of concurrent litigation over the same subject matter." *McReady v. O'Malley*, No. RWT 08CV2347, 2010 WL 917821, at *3 (D. Md. Mar. 8, 2010) (quotation marks omitted); *cf. Coppage v. Orlove*, 262 Md. 665, 667 (1971) (per curiam) (requiring stay until resolution of related proceeding). If both suits were allowed to proceed, 3M would face the risk of inconsistent and duplicative judgments, which is precisely what the rule against claim splitting is supposed to avoid. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 580 (D. Md. 2004).

Accordingly, this Court should dismiss this action or, in the alternative, stay it until the State's so-called AFFF suit has been resolved.

### II.    The Complaint Should Be Dismissed Because It Fails To Allege That 3M Caused Any Cognizable Injury

Under fundamental principles of both standing and tort law, the State must allege that it

---

[5] When duplicative suits are pending in the same jurisdiction, courts also have discretion to consolidate them. *Sensormatic*, 452 F. Supp. 2d at 626 n.2. But that is not presently an option.

has sustained a specific cognizable injury with a causal connection to a particular defendant. Because the State largely fails to plead the specific PFAS levels that it contends have caused harm to any specific natural resources, and because the State fails to adequately link any of the allegedly harmful PFAS levels in the State to PFAS produced by 3M, the State's Complaint should be dismissed.

*No injury.*  It is black letter law that "Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022).  Standing is an "irreducible constitutional minimum" that must be satisfied in all federal cases. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To have standing, a plaintiff must establish: "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions; and (3) a likelihood that the injury will be redressed by a favorable decision."  *Ali*, 26 F.4th at 596 (quoting *Lujan*, 504 U.S. at 560–61).  The injury-in-fact requirement means that the injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578  at 339 (quoting *Lujan*, 504 U.S. at 560).  The "traceability" requirement means "there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560.

The Complaint is impermissibly vague concerning the State's alleged injury.  The Complaint asserts generalized harm to the State's "drinking water, groundwater, surface water, soil, sediment, wildlife, other natural resources, and property." Compl. ¶ 8.  But that is as specific as the Complaint gets; the State does not identify "*which*" specific sites have allegedly been harmed. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (holding that allegations of general harm to "unnamed national forests" were insufficient to confer standing to challenge

forestry regulations). Instead, the State sweepingly asserts claims based on *all* of the natural resources in the State. Compl. ¶¶ 109, 111. The Complaint's allegations are similarly deficient with regard to the State's supposed injuries to its "coastal habitats and estuaries," *id.* ¶¶ 125–28, "soil and sediment," *id.* ¶¶ 129–30, and "biota," *id.* ¶¶ 131–34. There are few specific allegations concerning which ground- and surface-water sources, animals, soil, or coastal habitats have purportedly been contaminated. Even when the Complaint references a slightly more specific area, such as the Chesapeake Bay, its claims are still far too general. *See id.* ¶¶ 99–102, 125–26 (the "Chesapeake Bay is the largest estuary in the United States"). The failure to provide greater specificity regarding "*which*" of the State's natural resources have been allegedly harmed or to provide sufficient factual allegations demonstrating that alleged harm means that the State cannot establish a cognizable injury. *Summers*, 555 U.S. at 495.

The Complaint is also deficient because it does not allege the (1) level of PFAS at those unidentified sites, (2) the level at which the State deems a site "contaminated," or (3) the level at which PFAS would give rise to actual harm at those locations.[6] Courts routinely require that in "toxic tort" cases, such as this, the plaintiff must allege (and ultimately establish) that the amount of a chemical present at a site was unsafe. *See, e.g.*, *Emerald Coast Utils. Auth. v. 3M Co.*, 746 F. Supp. 2d 1216, 1228 (N.D. Fla. 2010) (mere presence of a chemical, without evidence of injury,

---

[6] The Complaint contains scant allegations regarding PFAS testing of certain (unidentified) sources of drinking water, *see* Compl. ¶¶ 35, 139–52, but even those allegations lack sufficient detail regarding (1) the specific levels of alleged contaminants at any of those (unidentified) sites, (2) whether the State alleges that those levels make the sites "contaminated," or (3) whether the State alleges that those levels give rise to harm. Instead, the State alleges only that tests of its drinking water sources have revealed samples with "PFOA+PFOS." *Id.* ¶¶ 138–54. The Complaint identifies a single set of test results that identified PFOS in groundwater, *id.* ¶ 151, but otherwise refers to "PFAS" or "PFOA+PFOS" in asserting contamination of Maryland's natural resources. This pleading lacks sufficient specificity to adequately allege an injury, even at the pleading stage.

does not establish standing); *Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017) ("Only PCB contamination levels sufficient to pose a health risk warrant remediation."). The State has failed to do so here.

*No causation.* All of the State's claims require it to allege that 3M caused the State specific harm. *See Ford Motor Co. v. Gen. Accident Ins. Co.*, 365 Md. 321, 335 (2001) (design defect); *Mazda Motor of Am., Inc. v. Rogowski*, 105 Md. App. 318, 325 (1995) (negligence and failure to warn); *InfoTek Corp. v. Preston*, 626 F. Supp. 3d 885, 894–95 (D. Md. 2022) (trespass); *Tadjer v. Montgomery Cnty.*, 300 Md. 539, 551–52 (1984) (nuisance); Md. Code Ann., Env't § 9-322 ("a person may not discharge any pollutant into the waters"); *id.* § 9-405.[7] "To be a proximate cause for an injury" under Maryland law, the defendant's conduct "'must be 1) a cause in fact, and 2) a legally cognizable cause.'" *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009) (quoting *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 156–57 (1994)). Where there are multiple potential causes, the plaintiff must still allege that each "'one of them, operating alone, would have been sufficient to cause'" the alleged harm. *Eagle-Picher Indus. v. Balbos*, 326 Md. 179, 208 (1992).

Separate from the Complaint's failure to adequately allege injury, the Complaint also fails to allege that 3M *caused* the State's purported injuries. "[I]n product liability cases, the plaintiff must 'link the defendant to the product' to establish" both standing and "causation." *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 453 (D. Md. 2019) (quoting *Scapa Dryer Fabrics, Inc.*

---

[7] Section 9-405 permits the State to "[s]u[e] for injunctive or other appropriate relief" if that action is "necessary to protect the health" of people who might be exposed to "a dangerous contaminant" in a public water system. That the State's action must be necessary to protect a person's health requires a causal connection between a defendant's actions and the presence of the dangerous contaminant in the water, especially given the "long-established rule" that statutes presumptively do not deviate from the common law unless "'absolutely required.'" *Santo v. Santo*, 448 Md. 620, 637 (2016). Causation is a fundamental element of common-law tort claims. *See*, *e.g.*, John C. Nagle, *CERCLA, Causation and Responsibility*, 78 Minn. L. Rev. 1493, 1496 (1994).

*v. Saville*, 418 Md. 496, 510 (2011)); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir. 1986) (under Maryland law, "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked"); *see Grueff v. Vito*, 229 Md. App. 353, 378 (2016), *aff'd*, 453 Md. 88 (2017). But the Complaint does not contain any specific allegations that connect 3M's products to any PFAS at (unidentified) sites in Maryland. That missing piece means that the Complaint's allegations fail.

The Complaint consistently alleges that "PFAS" contaminate various natural resources in Maryland. Compl. ¶¶ 8, 93–134. And the Complaint alleges that "3M and DuPont sold a wide variety of PFAS Products in Maryland." *Id.* ¶ 41. But the Complaint defines the term "PFAS Products" broadly to mean any "PFAS and those products that contain PFAS or release PFAS into the environment." *Id.* ¶ 2 n.2. The Complaint does not allege which of this wide variety of PFAS and PFAS-containing products—there are thousands of types of PFAS and myriad types products made with PFAS, *id.* ¶¶ 45, 47, 169—"cause[d]" the alleged "extensive and persistent . . . contamination" in the State, *id.* ¶ 259.

The Complaint further describes (unspecified) sites as contaminated if they contain at least *one* type of PFAS at any detectible level. But the Complaint's allegations offer no way to tell whether any of those sites contains PFAS that 3M produced—or whether they instead contain PFAS made by a different manufacturer, such as DuPont or any number of nonparty domestic or foreign PFAS manufacturers. To be sure, the Complaint purportedly "focuses on PFOS and PFOA," but even that focus does not solve the State's problem. The State does not allege that 3M and DuPont were the exclusive manufacturers of PFOS and PFOA. The Complaint therefore fails to allege a sufficient causal connection between 3M and PFAS at any particular site in Maryland.

17

*See Pittway Corp.*, 409 Md. at 244; *Exxon*, 406 F. Supp. 3d at 453, 455; *see also In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 321 (6th Cir. 2023) (no traceability where complaint lacked allegations permitting any "plausible inference that any of these defendants caused these five particular PFAS to end up" in plaintiff's blood); *Saunders v. Sappi N. Am., Inc.*, No. BCD-CIV-2023-00033, 2024 WL 1908964, at *9 (Me. Bus. & Consumer Ct. Jan. 2, 2024) (dismissing complaint "devoid of any fact allegation linking" the defendant's act "with the harm suffered by Plaintiffs").

A PFAS case from the District of Massachusetts is instructive. There, the complaint lacked any allegations explaining "which defendants' products were used on the premises throughout that fifty-year period." *Barnstable Cnty. v. 3M Co.*, No. CV 17-40002, 2017 WL 6452245, at *2–3, *11–12 (D. Mass. Dec. 18, 2017). Mere "conclusor[y] assert[ions] that each defendant made AFFF and is thus liable for the County's damages" were "not enough to survive the motion to dismiss" because the complaint failed "to draw a connection between each specific defendant's products and the contamination at the [relevant] Property." *Id.* at *11–12; *see also Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 464 (5th Cir. 1996) (no causation where the plaintiff could not "'pinpoint' the source of the elements found in and around [their] home"); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 425 (D.C. Cir. 1988) (evidence that defendant manufactured 95% of drug was insufficient to establish that defendant caused plaintiff's injury from that drug).

The same result should follow here. The Complaint never alleges specific facts to plausibly suggest a connection between 3M and any injury to the State. That basic failure to plead causation requires dismissal of all the State's tort claims.

18

### III.    The State's Negligence, Design-Defect, And Failure-To-Warn Claims Fail Because 3M Did Not Owe A Duty To The State

"Duty . . . is an essential element" of negligence, design-defect, and failure-to-warn claims. *Gourdine*, 405 Md. at 743; *see Valk Mfg. Co. v. Rangaswamy*, 74 Md. App. 304, 317 (1988), *rev'd*, 317 Md. 185 (1989).  Although the State suggests that 3M "had a duty to warn the State about the dangers of [its] PFAS Products," Compl. ¶ 275, that duty-to-the-world theory is contrary to Maryland law.  This Court should reject the State's invitation to expand Maryland tort law.

"Duty requires a close or direct effect of the tortfeasor's conduct on the injured party." *Gourdine*, 405 Md. at 746.  Foreseeability by itself "'does not suffice to establish a duty under Maryland law.'"  *Id.*  Maryland courts have "resisted the establishment of duties of care to indeterminate classes of people" because such a duty "would make tort law unmanageable" and "boundless."  *Id.* at 749 (quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 421 (2005)).  Under Maryland law, "there is no duty to 'warn the world.'" *Exxon*, 406 F. Supp. 3d at 463 (citing *Gourdine*, 405 Md. at 750).

Yet the Complaint suggests that 3M owed such a duty here.  The State does not allege that it was a user or consumer of any of 3M's products.  Instead, the State's theory is that 3M owed the State a legal duty because the State was foreseeably at risk of harm from others' use of PFAS-containing products.  Compl. ¶¶ 256, 274–75, 312–13.  That theory of duty has no bounds.  Just as the Supreme Court of Maryland (then known as the Maryland Court of Appeals) refused to recognize a duty by a drug manufacturer to warn those who could be affected by a patient after she took the manufacturer's medicine because that duty would extend to "an indeterminate class of people," *Gourdine*, 405 Md. at 750, this Court should also reject the State's unbounded theory of product manufacturer duty.

19

A recent Maryland state court decision, rejecting this boundless theory of duty in a similar environmental tort case, is instructive. The City of Baltimore sued several fossil-fuel producers, alleging that fossil fuels caused climate change. In relevant part, the court dismissed Baltimore's claims because the producers did not owe a duty to Baltimore. If manufacturers could be held liable for "negative results of using the[ir] products," even though the "products function as they were intended to," then "the duty to warn would be extended to every single human being on the planet whose use of [products] may have contributed to [environmental harm]." *Mayor of Balt. v. B.P. P.L.C.*, No. 24-C-18-004219, 2024 WL 3678699 at *11–12 (Md. Cir. Ct. Balt. City July 10, 2024) (relying on *Gourdine*, 405 Md. at 750); *see also Mayor of Balt. v. PepsiCo, Inc.*, No. C-24-CV-24-001003 (Md. Cir. Ct. Balt. City July 21, 2025), Slip Op. at 21 (dismissing similar claims in part because plaintiff's theory would "impose a duty on an endless category of people"). This reasoning applies with equal force here. 3M's PFAS-containing products functioned as intended, and consumers' use or disposal of the products caused the alleged harms. 3M has no duty to warn every person and entity who might one day interact with those who purchase or use 3M's products. This Court therefore should reject the State's attempt to expand Maryland law by imposing on 3M a boundless, unmanageable duty to the world.

## IV. The State's Design-Defect Claim Fails Because The State Does Not Allege Harm To End Users

The State's design-defect claim independently fails because the Complaint does not allege harm to the intended users of PFAS or to the end-users of PFAS-containing products. Under Maryland law, the seller of an allegedly defective product is liable only "for physical harm thereby caused to *the ultimate user or consumer*, or to his property." *Gourdine*, 405 Md. at 740 (emphasis added).

Consider another case brought by the City of Baltimore, this time against manufacturers of products with single-use plastic packaging.  The City asserted design-defect claim, alleging that the "eventual harms of plastic to the environment and human health" were a product defect that made the packaging "unreasonably dangerous to the flora and fauna of Baltimore."  *PepsiCo*, Slip Op. at 17.  Applying *Guordine*, the court dismissed the claim, reasoning that "[t]he injuries alleged . . . do not occur at the point of consumption or use of the product; rather, the alleged harm occurs after the product is discarded or once it enters the waterway."  *Id.* at 18.  It observed, for example, that the City "does not allege that a plastic soda bottle or snack wrapper . . . causes physical injury to the person drinking or eating from it."  *Id.*  Without any allegation of injury to the intended end-user of the manufacturer's product, the plaintiff could not state a claim for design defect.

The same is true here.  The harm for which the State attempts to hold 3M liable is the "release of PFAS into Maryland's environment" *from* the end products produced by third-party manufacturers.  Compl. ¶¶ 258, 263, 257 .  And it seeks damages "related to PFAS contamination of groundwater, surface water, sediment, soils, biota, and other natural resources throughout Maryland *where Defendants' PFAS products were transported, stored, used, handled, released, spilled, and/or disposed*."  *Id.* ¶ 264 (emphasis added).  That theory of harm cannot form the basis of a design-defect claim because Maryland law does not extend to alleged injury "to all those who consume and interact with [Maryland]'s natural resources."  *PepsiCo*, Slip Op. at 18; *see also Gourdine*, 405 Md. at 750 (no duty owed to "the world, an indeterminate class of people").

## V.    The Trespass Claims Fail For Additional Reasons

The Complaint also fails to state a trespass claim because (1) the State does not identify any contaminated property that it exclusively possesses; (2) the State does not allege that 3M had

control over the PFAS or PFAS-containing products at the time that they were released into the environment, and (3) the alleged invasion here was intangible.

***No possession.***   The trespass claim should be dismissed because the State does not allege that it exclusively possesses any of the (unidentified) land or resources at issue in this case.  A trespass occurs only "when a defendant interferes with a plaintiff's interest in the *exclusive possession* of the land . . . ."  *Exxon*, 406 F. Supp. 3d at 469 (quoting *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 408 (2013) (emphasis added)).  So "recovery for trespass requires that the defendant must have entered or caused something harmful or noxious to enter onto *the plaintiff's* land." *Albright*, 433 Md. at 408 (emphasis added).  This means that the State can assert a trespass claim only for alleged harm to property (or natural resources) over which it alleges exclusive possession.

The State fails to identify any such property.  The State seeks to recover generally for harm to natural resources in Maryland.  Compl. ¶¶ 112–34.  But the State does not, and cannot, claim that it exclusively possesses *all* of those resources.  While the Complaint makes the conclusory assertion that the State has "significant direct property interests in . . . State-owned lands," *id.* ¶ 15, the Complaint does not specifically identify *any* allegedly contaminated site that the State owns or exclusively possesses.

The State also brings claims "in its *parens patriae* capacity" or "as trustee of [the] natural resources" for those sites that it does not own, Compl. ¶ 14, but those theories cannot support trespass claims over land possessed by others.   In *Exxon*, the State brought materially indistinguishable trespass claims against defendants who allegedly contaminated natural resources with a chemical found in gasoline, and sought to recover for damage to "contaminated properties within its borders—even those it does not own."  406 F. Supp. 3d at 470.  The court rebuffed that effort.  Because "Maryland courts have never deviated from the rule that an action for trespass lies

22

only 'when a defendant intrudes upon a plaintiff's interest in the *exclusive possession* of the land,'" the State's "quasi-trustee interest in its natural resources, or proceeding *parens patriae*," cannot "confer[] the requisite possessory interest to sustain a *trespass* claim." *Id.* at 470–71 (quoting *Albright*, 433 Md. at 408). The court therefore dismissed the State's trespass claim "to the extent [the claim was] based on properties outside of its exclusive possession—*i.e.*, its natural waters and the properties of its citizens." *Id.* at 471; *see also State v. 3M Co.*, 2024 WL 5108255, at \*4 (Me. B.C.D. Dec. 12, 2024) (collecting cases and dismissing trespass claim where state purported to bring claims in *parens patriae* capacity but failed to establish exclusive possession of land); *State v. 3M Co.*, 2020 WL 13368654, at \*5 (Vt. Super. May 28, 2020) (same).[8]

Because the State has failed to allege that it exclusively possesses any allegedly contaminated site at issue in this case, the trespass claim fails.

***No control.*** To state a claim for trespass, a "'plaintiff must establish . . . an interference with a possessory interest in his property'" that occurred "'through the defendant's physical act or force against that property.'" *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 445 (2008). When property "is invaded by an inanimate or intangible object," such as PFAS, a plaintiff must show that the defendant had "some connection with or some control over that object" that trespassed

---

[8] In addition, beyond just its trespass claim, the State has no standing in its *parens patriae* capacity to recover money damages for alleged harm to privately owned property. *See* Compl. p. 80 (seeking an order requiring Defendants to pay "for economic damages and for the lost value (including lost use) of the State's natural resources"). The State lacks standing to seek damages that would benefit individual citizens. *See Paxton v. Dettelbach*, 105 F.4th 708, 715–16 (5th Cir. 2024) (holding that the State of Texas lacked "a valid quasi-sovereign interest" where the asserted interest was "wholly derivative of the personal . . . interests of its citizens"); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 772–73 (5th Cir. 2023) (holding that state lacked standing where its asserted interest was "wholly derivative of the interests of" private citizens' interests); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) (suit challenging California law regulating large egg producers was "inappropriate" because "aggrieved party [egg producers] could seek private relief").

onto or interfered with plaintiff's property.  *Exxon*, 406 F. Supp. 3d at 471 (quoting *Rockland Bleach & Dye Works Co. v. H. J. Williams Corp.*, 242 Md. 375, 387 (1966)); *see also B.P.*, 2024 WL 3678699, at \*14 ("Maryland courts have held that for a defendant to be liable for trespass there must be some connection with or some control over the object.").  Otherwise, the defendant "lack[s] the requisite trespassory intent."  *PepsiCo*, Slip Op. at 15.

That connection or control exists only when the defendant has the ability to physically control or direct the flow of the object immediately prior to the trespass.  For example, in *JBG/Twinbrook Metro Ltd. Partnership v. Wheeler*, 346 Md. 601 (1997), the court dismissed a trespass claim against Exxon brought by a plaintiff who alleged that gasoline from a nearby service station leaked from underground tanks, entered the groundwater, and eventually trespassed onto its land.  *Id.* at 606.  Although Exxon manufactured and sold the gasoline to the station, it did not own or operate the underground tanks, so it "had insufficient control" over the gasoline "to permit a finding of liability for trespass."  *Id.* at 626.  And in *SPS Ltd. Partnership LLLP v. Sparrows Point, LLC*, No. CV JFM-14-589, 2017 WL 3917153 (D. Md. Sep. 6, 2017), the court held that a trespass claim failed where the plaintiffs alleged that benzene from a nearby steel mill trespassed onto their shipyard after it left the mill and was carried through the water.  *Id.* at \*2.  The court reasoned that the plaintiffs had not established that the steel mill defendants "controlled the benzene so as to impose liability for trespass."  *Id.* at \*10.

The trespass claim against 3M should likewise be dismissed because the State does not allege that 3M controlled the PFAS (or PFAS-containing products) when the PFAS allegedly leached from those products and entered into natural resources in Maryland.  The Complaint alleges only that 3M manufactured and sold PFAS and PFAS-containing products to customers in Maryland.  Compl. ¶ 45.  The Complaint does not allege that 3M itself released any PFAS directly

24

into the environment in Maryland.  Instead, the Complaint alleges that only *after* 3M sold its PFAS or PFAS-containing products to third parties did PFAS enter Maryland's environment, following use or disposal by unidentified third parties.  Based on those allegations, the Complaint does not state a claim against 3M for trespass.  *See Wheeler*, 346 Md. at 626; *Dine v. W. Exterminating Co.*, No. CIV.A. 86-1857-OG, 1988 WL 25511, at *9 (D.D.C. Mar. 9, 1988) (manufacturer of pesticides could not be liable in trespass because it "took no action, intentional or otherwise, that directly caused a physical invasion of plaintiffs' interest in the exclusive possession of their land," whereas exterminator could be).

***Intangible invasion.***  The State's trespass claim also fails because the State does not allege a tangible invasion.  "[I]ntangible intrusions . . . are not typically actionable under a trespass theory."  *Schuman v. Greenbelt Homes, Inc.*, 212 Md. App. 451, 475 (2013) (citing *Nissan Motor Corp. v. Md. Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1116–17 (D. Md. 1982)).  A physical invasion must be by a person or tangible thing.  *See*, *e.g.*, Dan B. Dobbs et al., *The Law of Torts* § 53 (2d ed. 2023) ("Because the action for trespass was conceived as a means of protecting possession, a tangible entry upon the land has been traditionally required.").  Here, the State has alleged an invasion only by intangible PFAS particles.  *See Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 772 (S.D. W. Va. 2009) (PFAS are intangible); *see also Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 480 (S.C. 2013) (no "trespass cause of action for invisible odors"—only for "physical, tangible things").  Those allegations of an intangible invasion fail to state a claim for trespass.

## VI.    The Public-Nuisance Claim Fails For Multiple Reasons

The State alleges that 3M's manufacture and sale of PFAS products created a public nuisance because PFAS entered "groundwater, surface water, sediment, soils, and biota throughout Maryland."  Compl. ¶ 291.  This claim fails for two independent reasons.

25

First, as one court recently held, "Maryland state courts have yet to extend public nuisance law to cases concerning production, promotion and sale of consumer products." *See B.P.*, 2024 WL 3678699, at *10. That is sensible policy. If the manufacture and sale of lawful products could constitute a public nuisance, anyone could "convert almost every products liability action into a [public] nuisance claim," *Cnty. of Johnson v. U.S. Gypsum Co.*, 580 F. Supp. 284, 294 (E.D. Tenn. 1984). Allowing plaintiffs who never purchased or used a product to bring a public-nuisance claim would lead to boundless liability, which is why many courts "have refused to allow products-based public nuisance claims, signaling a clear national trend to limit public nuisance to land or property use." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 730 (Okla. 2021) (collecting cases). These courts have consistently recognized that claims arising out of the manufacture and sale of allegedly harmful products "are more suited as product liability claims." *See B.P.*, 2024 WL 3678699, at *10. This Court should follow the clear national trend that forecloses product liability-based nuisance actions against product-manufacturers and -sellers for nuisances that occur only after the product reaches a third party.[9] Otherwise, the State's effort to expand Maryland law to fit its allegations would transform Maryland's nuisance law into "a monster that would devour in one gulp the entire law of tort." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (quotation marks omitted).

---

[9] *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004) (firearms); *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (asbestos); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456 (R.I. 2008) (lead paint); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (PCBs). Florida courts, for example, have generally held that "nuisance does not apply to the design, manufacture, and distribution of a lawful product." *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001). This principle has been applied to foreclose PFAS nuisance claims under Florida law. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-CV-3487-RMG, 2023 WL 3521025, at *2 (D.S.C. May 5, 2023).

26

Second, the State's public-nuisance claim should also be dismissed to the extent that the State seeks to recover for harm to privately owned resources.  While a private nuisance involves interference with "'the private use and enjoyment of land,'" a public nuisance is an "'unreasonable interference with a right common to the general public.'"  *Tadjer*, 300 Md. at 551–52.  In other words, to constitute a public nuisance, the act must allegedly harm "the public at large."  *Wietzke v. Chesapeake Conf. Ass'n*, 421 Md. 355, 374 (2011).  "[W]hile the same activity may give rise to both a public and a private nuisance, the difference is in whether the property rights affected are either confined to private ownership or are cast broadly across the general public."  *Id.*

The State recognizes that at least some, if not most or all, of the allegedly contaminated sites for which it is suing are owned by private parties, which is why the State seeks relief in its *parens patriae* capacity.  *See* Compl. ¶ 14.  Because the State cannot assert a public-nuisance claim for contamination of private property, the nuisance claim should be dismissed to the extent that the claim rests on such allegations.

**VII.    The Title 9, Subtitle 3, Claim Should Be Dismissed Because The Complaint Does Not Allege That 3M "Discharged" PFAS Into The Waters Of This State**

The State's claim that 3M "discharged PFAS Products into the waters of this State" in violation of a state statute, Compl. ¶ 326, should be dismissed because the Complaint contains no allegations that 3M had a direct connection to the release of PFAS into water in Maryland.

Section 9-322 of the Maryland Code's Environment Article prohibits the "discharge [of] any pollutant into the waters of this State" without a permit.  Md. Code Ann., Env't § 9-322; *see also* Compl. ¶ 321.  The statute defines "discharge" as the (1) "addition, introduction, leaking, spilling, or emitting of a pollutant into the waters of this State" or (2) "placing of a pollutant in a location where the pollutant is likely to pollute."  Md. Code Ann., Env't § 9-101(b).  The State does not allege any facts that would support a plausible inference that 3M violated the provision.

The "cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Exxon*, 406 F. Supp. 3d at 474 (citing *Bottini v. Dep't of Fin.*, 450 Md. 177, 195 (2016)). Courts "begin" that process "with the normal, plain meaning of the language of the statute." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). If the language is clear, the inquiry ends. *Id.* "In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Id.* at 276.

Here, the language of the statutory provisions is clear. The Complaint contains no allegations that 3M directly added, introduced, leaked, spilled, or emitted PFAS "into" the water in Maryland. *See* Webster's Third New International Dictionary 1184 (1981) ("into" is "used as a function word . . . suggesting motion or passage to indicate a place or thing entered or penetrated"); Random House Dictionary of the English Language 746 (1966) ("to a point of contact with" or "used to indicate . . . immersion in" or "entry"). Nor does the Complaint allege that 3M "plac[ed]" PFAS or PFAS-containing products "in a location" where they were likely to pollute. *See* Webster's Third, *supra*, at 1727 ("place" means "to direct accurately to a desired area or previously determined spot"); Webster's Seventh New Collegiate Dictionary 646 (1976) ("place" means "to put in a particular place; set" or "to direct to a desired spot").

The Complaint does not allege that 3M added PFAS directly into the environment or otherwise directed PFAS products to a particular spot from which it was likely that PFAS would enter the environment. Instead, the Complaint alleges that PFAS manufactured by 3M (or DuPont) eventually wound up in the waters *after* 3M and DuPont sold PFAS and PFAS-containing products to third parties, who used those commercial or consumer products and then disposed of them. Compl. ¶¶ 2–3, 21–22, 41. Those third parties are thus the ones who allegedly "discharge[d]" PFAS into the water in Maryland under Section 9-322.

28

The Complaint's theory confirms this.  According to the Complaint, PFAS can enter the environment in one of three ways.  First, the Complaint alleges that PFAS can "enter the environment from industrial facilities that manufacture or use PFAS," Compl. ¶ 37, but the Complaint does not allege that 3M owned, operated, controlled, or used any such facilities in Maryland or that any PFAS were emitted from such a facility.  Second, the Complaint asserts that PFAS can "enter the environment through the normal use and disposal of PFAS [p]roducts."  *Id.* ¶ 38.  Although the State alleges that 3M manufactured and sold PFAS-containing products that were *ultimately* "used . . . [and] disposed of" by third parties in Maryland, *id.* ¶ 255, the State does not allege that 3M *itself* used or disposed of any PFAS-containing products in the State.  It is not consistent with common usage or common sense to say that 3M's alleged arm's-length *sale* of those products to third parties who disposed of them in various ways constitutes placement of PFAS in a location where it is likely to pollute.  Third, the Complaint alleges that PFAS can contaminate water after leaking from landfills or "[m]unicipal and industrial wastewater treatment plants."  *Id.* ¶¶ 7, 39.  The Complaint likewise does not allege that 3M owned, operated, controlled, or used any landfills or wastewater-treatment plants in Maryland *or* sent any PFAS to them.

Consistent with its plain meaning, Section 9-322 has been invoked only in enforcement actions against those with a direct connection to the release of chemicals into the environment. *See Md. Dep't of the Env't v. GenOn Ash Mgmt., LLC*, No. CIV. PJM 10-0826, 2013 WL 2637475, at *2 (D. Md. June 11, 2013) (settling enforcement action against defendant who operated a disposal facility where "liquid such as rain" would "pas[s] through the disposal areas" and "then flow out as leachate containing pollutants, and enter nearby surface and groundwater"); *Gregg v. Richmond*, No. CIV.A. DKC 2001-1212, 2004 WL 257080, at *3 (D. Md. Feb. 11, 2004) (noting probable cause to believe provision was being violated where state agent "observed discharge trails

coming from Plaintiff's property," took samples, and found unlawful pH levels). That makes sense: Section 9-322—which is part of a state discharge-permitting scheme, *see Howard Cnty. v. Davidsonville Area Civic & Potomac River Ass'ns*, 72 Md. App. 19, 23 (1987)—does not reach the manufacture and sale of a product to third-party users or consumers. *Cf. United States v. Union Corp.*, 277 F. Supp. 2d 478, 491 (E.D. Pa. 2003) ("The sale of a useful product does not constitute the 'handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste.'"); *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1362 (9th Cir. 1990) (courts "have construed 'disposal'" not to include "the productive use of the substance," such as sales of the substance as a product). That is the only relevant conduct that the Complaint attributes to 3M. The State's claim under Section 9-322 therefore fails.[10]

## CONCLUSION

For these reasons, this Court should dismiss the Complaint as to 3M in its entirety or, in the alternative, stay this action pending resolution of the State's first-filed AFFF suit.

---

[10] Even if the State could maintain an action under Section 9-322, the State could not obtain injunctive relief under Subtitle 3. *See* Compl. ¶ 325. "'[I]njunctive relief is a preventive and protective remedy, *aimed at future acts*, and is not intended to redress past wrongs.'" *Ehrlich v. Perez*, 394 Md. 691, 733 (2006). As explained, the only alleged connection 3M has to the release of PFAS in Maryland is the alleged manufacture and sale of PFOS and PFOA. But, according to the Complaint, 3M stopped manufacturing PFOS and PFOA by 2002. Compl. ¶¶ 72, 92; *supra* at 4. There is therefore no relevant future act by 3M for the Court to enjoin.

March 18, 2026

Respectfully submitted,

/s/  Tonya Kelly Cronin

Tonya Kelly Cronin (Bar No. 27166)
Alison C. Schurick (Bar No. 19770)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, MD 21202
(410) 862-1049
tykelly@bakerdonelson.com
aschurick@bakerdonelson.com

Lauren R. Goldman (*pro hac forthcoming*)
Justine Goeke (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
lgoldman@gibsondunn.com
jgoeke@gibsondunn.com

Amir C. Tayrani (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com

Daniel L. Ring
Terri L. Mascherin (*pro hac vice* forthcoming*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Tel: (312) 923-2625
dring@jenner.com
tmascherin@jenner.com

Joanna Wright (*pro hac vice* forthcoming)
JENNER & BLOCK LLP
1155 Ave. of the Americas
New York, NY 10022
Tel: (212) 891-1600
jwright@jenner.com

*Counsel for 3M Company*

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March 2026, the foregoing was electronically filed with the Clerk of the Court using this Court's CM/ECF system, which served a copy on all counsel of record.

*/s/ Tonya Kelly Cronin*
Tonya Kelly Cronin

32