**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

|  |  |
|---|---|
| STATE OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; EIDP, INC., (f/k/a E.I. DU PONT DE NEMOURS AND COMPANY); AND THE CHEMOURS COMPANY,<br><br>Defendants. | Case No. 1:23-cv-01836-RDB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3M COMPANY'S
MOTION TO STAY THIS ACTION PENDING TRANSFER DECISION BY THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**INTRODUCTION**

Defendant 3M Company ("3M") moves the Court to stay all proceedings in this matter until the Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel") rules on 3M's pending motion to transfer this action to the District of South Carolina for inclusion in the multidistrict litigation captioned *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation* (MDL No. 2873) (the "AFFF MDL"). Transfer of this matter to the AFFF MDL is likely to occur within the next three months (one to two weeks following the JPML's May 28, 2026 hearing session). A brief stay pending the JPML's decision is necessary to avoid the inefficiencies of duplicative proceedings and the risk of inconsistent rulings.

The State of Maryland filed two "overlapping lawsuits" against 3M, both asserting identical causes of action and both seeking recovery for damages from alleged contamination by per- and polyfluoroalkyl substances ("PFAS") across the State. *Maryland v. 3M Co.*, 130 F.4th 380, 385 (4th Cir. 2025). The two suits have "only [one] meaningful difference," *id.*—one of them, pending in the AFFF MDL, seeks damages for alleged contamination of the State's natural resources by PFAS stemming from aqueous film-forming foams ("AFFF"); the other, pending in this Court, seeks damages for alleged contamination of the very same natural resources by PFAS stemming from products *other than* AFFF. But PFAS derived from AFFF products are the exact same compounds as PFAS derived from non-AFFF products.

In a decision the U.S. Supreme Court recently refused to disturb, the Fourth Circuit vacated the remand of this case to state court, concluding that "3M's Military AFFF production is inextricably related to [Maryland's] general allegations of PFAS contamination, notwithstanding [its] attempts to draw a line between 3M's federal and non-federal work." *Id.* at 392. The Fourth Circuit confirmed that the factfinder in this case (just like in Maryland's AFFF case in the MDL)

will have to "disentangle" at least two questions related to AFFF at any given site: "whether certain PFAS contamination came from 3M's Military AFFF" and "how much of a given sample of PFAS contamination came from Military AFFF." *Id.* at 391; *accord Maine v. 3M Company, Inc.*, 159 F.4th 129, 130–31 (1st Cir. 2025) (explaining that Maine's "two almost-identical suits against 3M" will require a federal court to determine "whether and to what extent [PFAS] contamination from AFFF sources has commingled with non-AFFF").

Moreover, Maryland resoundingly "made clear" before the Fourth Circuit that it does not disclaim recovery in this case for damages to sites with mixed PFAS contamination stemming from both AFFF and non-AFFF sources; instead, it admittedly "envision[s] recovering" in this case "for mixed PFAS contamination from numerous geographic locations." *Maryland*, 130 F.4th at 392. As a result, AFFF discovery will be at the very heart of this case—just as it is in the State's AFFF case in the MDL, as well as in a number of other cases brought in the MDL by Maryland-based plaintiffs.

Consistent with the Fourth Circuit's decision, 3M has moved to transfer this action to the AFFF MDL. Although the Panel previously denied 3M's first request to transfer this action in 2023, it expressly invited 3M to tag it again "if plaintiff's attempt to separate its AFFF and non-AFFF claims becomes untenable"—a result the Panel said "would not be surprising." Order Denying Transfer at 4, *In re Aqueous Film-Forming Foams*, MDL No. 2873 (J.P.M.L. Oct. 4, 2023) ("JPML Dkt."), ECF No. 2129. The Fourth Circuit's decision makes clear that time has now come. The court of appeals' rejection of the State's AFFF disclaimer for purposes of deciding that this case should proceed in federal court applies with equal force to the JPML's upcoming decision whether to transfer this case to the AFFF MDL along with its nearly identical twin. Because the same AFFF-related questions comprise an essential component of both this case and the State's

3

"overlapping" MDL case, *Maryland*, 130 F.4th at 385, the MDL court is best positioned to efficiently address those questions, and "[Maryland's] efforts to have two courts answer the same questions must fail," *Maine*, 159 F.4th at 131.

A short stay pending the JPML's decision will neither prejudice the State nor materially lengthen the lifespan of this complex litigation. The State's unsuccessful attempts to avoid federal jurisdiction, including its pursuit of *en banc* review and certiorari, have kept this case procedurally at its inception, and discovery has not yet begun. Given that context, an additional three-month pause while the Panel determines where this case will ultimately proceed will not meaningfully extend the timeline for this case. A short pause would also spare 3M the prejudice of duplicative motion practice and discovery as well as the risk of inconsistent rulings during the brief period when its motion to transfer is actively being considered by the JPML. As this Court has previously recognized, a stay is warranted under such circumstances. *See Yearwood v. Johnson & Johnson, Inc.*, No. 12-1374, 2012 WL 2520865, at *3–5 (D. Md. June 27, 2012).

## BACKGROUND

### I.    The AFFF MDL

AFFF is a highly effective firefighting agent, originally developed by the U.S. military in the 1960s to quickly extinguish liquid fuel fires, that has been used for decades on Navy ships and military bases, at larger civilian airports, and other settings. The chemical components that give AFFF its superior fire-suppression features are PFAS compounds such as perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS). Since 2016, AFFF manufacturers and other defendants have faced numerous product-liability actions alleging harms from PFAS in AFFF. In December 2018, recognizing that centralization would "eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion

practice); and conserve the resources of the parties, their counsel, and the judiciary," the JPML established the AFFF MDL to coordinate pretrial proceedings in all such cases. *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). The AFFF MDL currently includes thousands of cases.

## II.    Procedural History

On May 30, 2023, Maryland filed two "overlapping lawsuits" against Defendants in the Circuit Court for Baltimore City. *Maryland*, 130 F.4th at 385. Each lawsuit raised "the same seven state-law causes of action against 3M," *id.*, and each was based on substantially similar allegations of PFAS contamination of the same natural resources throughout Maryland. "The only meaningful difference in the complaints is that one was directed toward 3M's PFAS production through its manufacture of AFFF generally—Military AFFF and otherwise—while the other was directed towards 3M's production of other PFAS-containing products and specifically excluded any AFFF." *Id.*

3M removed both suits pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *Id.* at 384. As to this putative "non-AFFF" case, 3M alleged that PFAS contamination from AFFF made pursuant to military specifications ("MilSpec AFFF") has indistinguishably commingled across Maryland with PFAS contamination from non-AFFF products. As a result, 3M has a right to a federal forum to raise a federal government contractor defense as to such mixed contamination. *See id.* at 392.

After removal, the explicitly AFFF-related action was transferred without opposition to the AFFF MDL (*see* JPML Dkt. 2006 (Jul. 27, 2023)), and 3M moved to transfer this case as well. The Panel denied 3M's motion without prejudice, finding that the overlap between this action and actions in the MDL, including the State's AFFF action, was not yet "substantial and concrete"

enough—while inviting 3M to seek transfer again if the case "evolve[d] into a more obvious AFFF action." JPML Dkt. 2129 at 2, 4.

Meanwhile, this Court granted Maryland's motion to remand this case to state court, giving the State's purported disclaimer of recovery for AFFF "dispositive effect," and determining that 3M's government contractor defense as to the AFFF products that it produced for the U.S. military "would not be present" in this case. *Maryland*, 130 F.4th at 386. The Fourth Circuit disagreed and vacated the remand order. *Id.* at 393. The court of appeals confirmed that "3M's federal work" in producing AFFF (giving rise to a government contractor defense) is "inextricably related to the charged conduct" at issue in this action. *Id.* at 391. The court observed that "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways," and that "some of the PFAS contamination charged by the State[] came from [3M's] Military AFFF." *Id.* at 390. The court thus held that "[w]hatever factfinder" adjudicates this case will need to "disentangle" two pertinent questions related to AFFF: whether PFAS contamination at any given site in Maryland was caused in part by AFFF, and if so, to what extent. *Id.* at 391.

Maryland unsuccessfully sought *en banc* review by the Fourth Circuit and then certiorari from the U.S. Supreme Court. *See* Order, *State of Maryland v. 3M Co.*, No. 24-1218 (4th Cir. May 28, 2025), ECF No. 66 (denying petition for rehearing *en banc*); *Maryland v. 3M Co.*, No. 25-517, 2026 WL 568301 (U.S. Mar. 2, 2026) (denying petition for writ of certiorari). Concurrently with this motion to stay, 3M filed its motion to transfer, *see Ex. A;* JPML Dkt. 4204, and a motion to

6

dismiss, *see* ECF No. 62.[1] The JPML is expected to issue a decision on 3M's transfer motion no later than one to two weeks after its scheduled hearing session on May 28, 2026.[2]

## ARGUMENT

This Court should exercise its broad discretion to stay this proceeding pending a decision by the JPML regarding transfer, just as it did when 3M previously moved to transfer this action. *See* ECF No. 18. A court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to issue a stay, courts consider the following factors: (1) "conservation of judicial resources," (2) "hardship and inequity to the moving party if the action is not stayed," and (3) "potential prejudice to the non-moving party." *Yearwood*, 2012 WL 2520865, at *3. Applying these factors, courts "frequently grant stays pending a decision by the [JPML] regarding whether to transfer a case." *Good v. Altria Grp.*, 624 F. Supp. 2d 132, 134 (D. Me. 2009) (alteration in original); *see also Yearwood*, 2012 WL 2520865, at *5; *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) ("[W]here a multi-district litigation proceeding has been established, courts have routinely stayed motions pending rulings by the JPML."). As discussed below, each of these factors weighs in favor of granting a stay here.

---

[1] 3M respectfully submits that whether this case is stayed, transferred, or dismissed, this case should not proceed in this Court at this time.

[2] Although the clerk of the JPML administratively declined to issue a conditional transfer order, that initial determination does not bind the Panel, which has granted motions to transfer even after the Clerk declined to issue a CTO. JPML Rule 7.1(b)(i) provides that "[i]f the Clerk of the Panel determines that a potential tag-along action is not appropriate for inclusion in an MDL proceeding and does not enter a CTO, any party may move for its transfer" and ask the Panel itself to determine whether the case warrants transfer.

## I.    A Stay Will Promote Judicial Economy.

A stay pending transfer would favor judicial economy and reduce the burdens on the parties and the Court in this case. The Fourth Circuit has made clear that the court overseeing this case will need to "disentangle" two AFFF-related questions: whether PFAS contamination at any given site in Maryland was caused in part by AFFF, and if so, to what extent. *Maryland*, 130 F.4th at 391. Because the *very same* questions are already the subject of proceedings in the AFFF MDL— in particular Maryland's "overlapping" statewide AFFF lawsuit—the JPML is likely to transfer this case. The Panel has repeatedly transferred purported "non-AFFF" actions brought by states when their claim-splitting stratagems have become "untenable," as is the case here. *See* Transfer Order at 3–4, JPML Dkt. 1020 (June 7, 2021) (transferring Michigan's putative non-AFFF case, explaining that the Panel has "rejected" attempts by plaintiffs to "split . . . claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL"); Transfer Order at 3, JPML Dkt. 1927 (June 5, 2023) (transferring Illinois's non-AFFF suit where transfer was "necessary to avoid overlapping discovery and duplicative pretrial proceedings"); Transfer Order at 3, JPML Dkt. 4061 (Dec. 11, 2025) (Oklahoma).[3]

Further litigation and discovery in this Court will duplicate litigation and discovery taking place in the AFFF MDL. And continued litigation of Maryland's twin cases risks inconsistent rulings between the two courts in which the cases are currently pending. *See Good*, 624 F. Supp. 2d at 135 (stay was necessary so as not to "preempt the [MDL] court's discretion" or undermine "the efficient conduct of pretrial proceedings" in the MDL). Under the circumstances, it makes

---

[3]A number of other states included all their claims for alleged PFAS contamination from AFFF and other products in single actions now pending in the MDL. *See, e.g.*, Transfer Order at 2–3, ECF No. 1646 (Dec. 13, 2022) (transferring Wisconsin's claims encompassing both AFFF and non-AFFF sources).

little sense to waste the Court's resources litigating this still-nascent case. "[J]udicial economy and the desire for consistent results [thus] militate in favor of a stay" pending transfer. *City of Portland v. Purdue Pharma, LP*, No. 1:18-cv-00298, 2018 WL 6191127, at *5 (D. Me. Nov. 28, 2018).

In addition, the Fourth Circuit's decision addressed not only Maryland's "non-AFFF" action, but also South Carolina's similar suit, which is already pending before the MDL court. *See Maryland*, 130 F.4th at 393. In vacating the remand of both suits to state court, the Fourth Circuit provided guidance on the two remaining prongs of federal-officer removal to be adjudicated in both cases if Maryland and South Carolina choose to renew their remand motions. *Id.* It would thus be inefficient—and risk inconsistent rulings—for this Court and the MDL court to each address those same questions. A stay of proceedings here would allow for the MDL court, post-transfer, to address together the next steps in both this case and the South Carolina action. Such material and substantial savings warrant a brief stay of this action pending a decision on transfer.

## II.    Denial of a Stay Would Prejudice 3M.

A stay is also warranted because "allowing pretrial proceedings to continue poses a significant risk of duplicative motions and discovery that could result in needless expense and inequity to" 3M. *Azar v. Merck & Co.*, No. 3:06-cv-0579, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006); *accord Yearwood*, 2012 WL 2520865, at *4 ("Requiring Defendants to litigate the same issues in this Court that will likely be litigated in MDL 2244 clearly creates a burden outweighing the brief delay that Plaintiffs potentially face.").

Without a stay, 3M would be required to begin engaging in further pretrial proceedings, whether a renewed motion to remand or other initial motion practice or discovery—all of which are already being overseen and addressed in the AFFF MDL. The burden of such duplicative litigation is precisely the harm that the MDL mechanism was designed to prevent. *See Lewis v.*

*Cottrell, Inc.*, No. 11-2632, 2012 WL 12252554, at *1 (D. Md. Feb. 14, 2012). Having these issues decided by this Court rather than the MDL court would also create the risk of inconsistent rulings on common issues. *See Yearwood*, 2012 WL 2520865, at *4 (noting that resolution by the MDL court serves "the interest[s] of judicial efficiency and consistent adjudication"). Thus, this factor also weighs in favor of entering a stay.

## III.    A Stay Will Not Prejudice the State.

By contrast, the State will not be prejudiced by a short stay, lasting for far less time than its own unsuccessful efforts to avoid federal court. Courts routinely hold that short delays pending a JPML transfer decision do not prejudice plaintiffs. *See Gallagher v. Boehringer Ingelheim Pharms., Inc.*, No. 22-cv-10216, 2023 WL 402191, at *9 (S.D.N.Y. Jan. 25, 2023) (stay during period until next JPML hearing would not prejudice plaintiff); *Royal Park*, 941 F. Supp. 2d at 372 ("[S]uch short delays caused by staying proceedings until the JPML decides whether to transfer a case usually do not prejudice the plaintiff."). Maryland's primary argument against the previous stay in this case pending transfer was that "any decision on Maryland's remand motion would be substantially delayed by a transfer to the MDL." ECF No. 23-1 at 10. With the jurisdictional issues largely resolved by the Fourth Circuit, *see Maryland*, 130 F.4th at 392–93, that is no longer a valid concern. And if the State does choose to pursue any remaining jurisdictional arguments, the MDL court, with the benefit of the Fourth Circuit's guidance and its own years of experience in dealing with the government contractor defense, is well positioned to address those issues (as it will already be doing for the companion South Carolina case).

Moreover, a stay pending the JPML's active consideration of transfer will not result in meaningful delay. This case is still only at the pleading stage and no discovery has commenced. Because of Maryland's unsuccessful jurisdictional gambit, the State has spent essentially the entire

10

lifespan of the case litigating over the forum, including its pursuit of *en banc* review and certiorari. A brief further pause while the JPML considers whether this case now belongs in the MDL with its nearly identical AFFF twin will not materially affect the ultimate timeline of this complex litigation. *See Yearwood*, 2012 WL 2520865, at *3 ("[T]his Court does not find a likelihood of any substantial delay in the MDL proceedings, nor does it find that any delay that might result from a stay would be prejudicial."); *Wood v. Johnson & Johnson*, WDQ–12–1572, 2012 WL 3240934, at *2–3 (D. Md. Aug. 3, 2012) ("[T]he chance of a short delay for the plaintiffs is outweighed by the possible prejudice faced by the Defendants because it would potentially subject [the] Defendants to the significant burden of duplicative litigation." (second alteration in original) (quotation omitted)). The State should not be heard to claim prejudice from a brief delay to resolve a forum question when its own unsuccessful jurisdictional stratagem has created far longer delays. A stay is thus appropriate under this factor as well.

*     *     *

In sum, the stay factors weigh heavily in favor of granting 3M's motion. Further proceedings in this Court before the JPML decides whether to transfer this case to the AFFF MDL would be inconsistent with the purpose of the MDL statute, the JPML's decision establishing the MDL, and fundamental principles of sound judicial administration. A stay will conserve judicial resources, prevent duplicative litigation, and ensure uniform adjudication across common issues.

11

## CONCLUSION

The Court should stay all proceedings in this matter pending the JPML's transfer decision.


DATED: March 18, 2026                    Respectfully submitted,

/s/  Tonya Kelly Cronin
Tonya Kelly Cronin (Bar No. 27166)
Alison C. Schurick (Bar No. 19770)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, MD 21202
(410) 862-1049
tykelly@bakerdonelson.com
aschurick@bakerdonelson.com

Lauren R. Goldman (*pro hac vice forthcoming*)
Justine Goeke (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
lgoldman@gibsondunn.com
jgoeke@gibsondunn.com

Amir C. Tayrani (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com

Daniel L. Ring
Terri L. Mascherin (*pro hac vice forthcoming*)
Jenner & Block LLP
353 N. Clark St.
Chicago, Illinois 60654
Tel: (312) 923-2625
dring@jenner.com
tmascherin@jenner.com

12

Joanna Wright (*pro hac vice forthcoming*)
Jenner & Block LLP
1155 Ave. of the Americas
New York, NY 10022
Tel: (212) 891-1600
jwright@jenner.com

*Counsel for 3M Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March 2026, the foregoing was electronically filed with the Clerk of the Court using this Court's CM/ECF system, which served a copy on all counsel of record.

/s/  Tonya Kelly Cronin
Tonya Kelly Cronin